**Inez M. FLORES, Appellant (Plaintiff),**

v.

**John W. SIMMONS, Rose M. Simmons, J. Mark Simmons, and Marilyn Simmons, in their individual capacities, and as Trustors, Trustees, and/or Beneficiaries of Pioneer Mobile Park Trust and John and Mark Simmons Trust, D/B/A Pioneer Estates and Eastridge Rental Properties, Appellees (Defendants).**

No. 98–357.

Supreme Court of Wyoming.

March 23, 2000.

Representing Appellant: Lowell H. Fitch of Fitch Law Offices, Torrington, Wyoming.

Representing Appellees: Rebecca A. Lewis of Lewis & Hunt, LLC, Laramie, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN & HILL, JJ.

LEHMAN, Chief Justice.

Inez Flores (Flores) helped her daughter and son-in-law move into a trailer rented from the appellees. As Flores was leaving the trailer, part of the top outside step of the stairway collapsed, causing her to fall. Flores filed suit against the owners of the mobile home park, claiming they were negligent in maintaining the stairway. The district court granted summary judgment to the appellees, finding the landlord could not be held liable for injuries caused by an unknown latent defect on the rented premises. We affirm.

## ISSUES

Flores presents two issues for consideration:

I: Is there some reason in law and policy a Wyoming mobile home park operator may **ever** insist he is under no legal obligation to exercise reasonable care to prevent foreseeable harm to a lawful and ordinary user of a stairway serving his unit for rent and the served unit is occupied by a renter?

II: Does this case present with a genuine and material jury question precluding summary judgment in favor of a mobile home park operator, concerning an alleged-disputed unreasonably dangerous and discoverable defect, over the disputed issue whether the defect was materially "latent" or "patent," but in any event caused a sudden failure of a mobile home park stairway and personal injury to an ordinary user, the existence of which defect there is alleged and disputed the park operator should have known and did not make known to, or otherwise reasonably protect the injured person at risk?

The appellees rephrase the issues as follows:

I. Did the trial court err in granting summary judgment to Appellees and de-

termining that Appellees owed no duty to Appellant because:

    A. Appellees were landlords,

    B. The allegedly defective stairs were not "common area" or under Appellees['] control, and

    C. Appellees had no reason to know of any latent defect in the stairs?

II. Did the exculpatory clause in the lease preclude liability by Appellees such that summary judgment is appropriate[?]

## FACTS

On June 20, 1995, Flores' daughter and son-in-law moved into a rented trailer located in a mobile home park in Torrington owned by the appellees. Flores accompanied her husband when he brought the last load of the couple's belongings to the trailer. At about 5:30 p.m., Flores followed her husband as he went out of the trailer and down the outside steps. Although her husband proceeded down the steps without incident, part of the top step split off when Flores stepped down, causing her to grab on to the railing as she fell. This effort damaged her right shoulder. Flores filed suit, alleging that her injuries were caused by the appellees' negligence.

On August 24, 1998, the appellees filed a Motion for Summary Judgment, claiming that Flores had failed to assert a duty which was breached by them and that the rental contract released them from liability. Flores responded by stating the duty existed because: (1) the appellees were not "landlords" entitled to the protection of the doctrine of caveat emptor (but rather were "innkeepers"); (2) there was a question of fact regarding whether the outside steps were part of the rented unit or remained in the control of the appellees or, in the alternative, whether the employment of a maintenance man, who was to inspect the steps for safety and make any repairs, created an affirmative duty to discover and repair a latent defect in the stairs or to warn Flores of the danger; and (3) a duty should be found under the factors presented in *Mostert v. CBL & Assocs.*, 741 P.2d 1090 (Wyo.1987). A hearing was held on October 6, 1998, and the district court issued a decision letter on November 3, 1998, granting summary judgment in favor of the appellees. Flores appeals to this Court.

## STANDARD OF REVIEW

■ Summary judgment is appropriate only when a review of the record, in the light most favorable to the nonmoving party, reveals no triable issues of material fact and judgment is warranted as a matter of law. *Exxon Corp. v. Bd. of County Comm'rs, Sublette County*, 987 P.2d 158, 161 (Wyo.1999); *Gordon v. Spectrum, Inc.*, 981 P.2d 488, 491 (Wyo.1999). After the movant establishes a prima facie case, the burden of proof shifts to the opposing party who must show a genuine issue of material fact or come forward with competent evidence of specific facts countering those facts presented by the movant. *Gordon*, 981 P.2d at 491–92. Although summary judgment is not favored in negligence actions, it is appropriate when the plaintiff is unable to establish a duty on the part of the defendant. *Krier v. Safeway Stores 46, Inc.*, 943 P.2d 405, 408 (Wyo.1997).

## DISCUSSION

■ The district court found that there were no material issues of fact as to whether the appellees were landlords rather than "innkeepers," as argued by Flores. The test which establishes the landlord and tenant relationship was correctly cited by the district court as follows:

> The necessary elements of the relationship of landlord and tenant have been said to be: "[p]ermission or consent on the part of the landlord, subordination to the landlord's title and rights on the part of the tenant, a reversion in the landlord, an estate in the tenant, and the transfer of possession and control of the premises to the tenant under a contract either express or implied between the parties."

*Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 543 (Wyo.1988); *see also* Robert S. Schoshinski, American Law of Landlord and Tenant § 1:1 (1980 & Supp.2000).

Flores' contention that the appellees were "innkeepers" is unsupported by pertinent authority; indeed, it flies in the face of the applicable authorities. *See, e.g.*, Schoshinski,

supra, at § 1:5; 43A C.J.S. *Inns, Hotels, and Eating Places* §§ 2 & 5 (1978). Flores also disputes the district court's conclusions on the basis that a "mobile home" is personal, not real, property and, therefore, cannot be the subject of a landlord and tenant relationship. To whatever extent a mobile home may be deemed personalty in other contexts, it is in the instant circumstances unquestionably a dwelling which may become the object of a landlord and tenant relationship. *See* Shepard's Mobile Homes and Mobile Home Parks §§ 2.2 & 4.11 (1975 & Supp. 1999) (" 'They are generally placed permanently in parks; once in place, only about one in every hundred mobile homes is ever moved.' " Section 2.2 at 5 (Supp.1999) (quoting *Yee v. City of Escondido, California*, 503 U.S. 519, 523, 112 S.Ct. 1522, 1526, 118 L.Ed.2d 153 (1992))). Mobile homes are subject to a wide variety of landlord and tenant relationships. Moreover, the rental agreement itself used the terms "tenancy" and "tenant" on seventeen occasions. The district court's conclusion that "the rental agreement clearly contemplates the landlord and tenant relationship" is precisely correct, especially when viewed in the light most favorable to Flores.

■ Flores contends the defect was "latent" and the landlord knew of the defect and did not inform the tenant, as he had a duty to do. The only evidence presented to the district court was that the landlord did not know of the latent defect, and there was no suggestion in the evidentiary material presented to the district court that the appellees should have known of the defect. Our law is clear that a landlord may not be held liable for injuries sustained by tenants or their guests for latent defects unless such defects were known to the landlord or should have been known by the landlord. *Medlock v. Van Wagner*, 625 P.2d 207, 208–09 (Wyo. 1981). Flores presses the limits of arguing in the alternative by suggesting that, if the defect was not latent, it was patent. Of course, that argument is self-defeating because a tenant is required to take suitable

precautions in the face of a patent defect. *Ortega v. Flaim*, 902 P.2d 199, 204 (Wyo. 1995). In addition, we note that one of the provisions of the rental agreement was: "The Tenant states that they have personally checked the premises and accept them in their present condition and deem rental home to be safe." Once again, the only evidence before the trial court from both Flores and the appellees was that the faulty step was not patently obvious.[1] The trial court correctly determined there was no genuine issue of fact about this.

■ Flores also contends that the faulty steps which were, for all intents and purposes, "attached" to the mobile home and were used only by the tenants and their guests for the purpose of entering the door to the home, were a "common area" over which the landlord maintained control and, therefore, the appellees owed a special duty. *See Lyden v. Winer*, 878 P.2d 516, 518–20 (Wyo.1994). There are absolutely no evidentiary materials in the record to support this contention. The district court's decision in this regard is sound.

We make one final observation with regard to Flores' contentions. In important part, she grounds her "theory" in this appeal on *Mostert*, 741 P.2d 1090. That case involved the tragic death of Mostert's daughter when the vehicle in which she was riding was engulfed by flood waters after she left a Cheyenne movie theater without being warned by the theater that the National Weather Service, civil defense authorities, and local law enforcement officials had issued severe thunderstorm, flash flood, and tornado warnings for the Cheyenne area. 741 P.2d at 1091. Flores' attempts to equate the circumstances of that case with this one, or to make an analogous argument from it, are, at best, baffling.

The appellees ask us to consider the exculpatory clause language in the lease as a second ground for affirming the district

---

1. On July 1, 1999, statutes governing residential rental property became effective. Those statutes set out the duties of owners and renters and could, perhaps, alter the existing law which governs the landlord and tenant relationship. Wyo. Stat. Ann. §§ 1–21–1201 to –1211 (LEXIS 1999).

court. The district court declined to apply that provision of the contract, and there appears to be good reason for that. In any event, analysis of that issue is unnecessary to our disposition of this case, and we decline to address it.

The summary judgment of the district court is affirmed in all respects.